something be done as soon as possible to get me back on the effective treatment I had been receiving prior to my arrival at this facility, as I do not wish to be added to the list of people who have died here in the last few months.

Recalling the certificate of full accreditation from JCAHO that the medical services received last year, and which they proudly display on the waiting room wall, I hope my treatment can be improved so as to reflect the quality of care implied in such an award.

I would appreciate a written reply.

ADDENDUM B

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                                        FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) Warden Gary L. Winkler | DATE: May 15, 2003 |
| FROM: Theodore Sabot | REGISTER NO.: 11556-052 |
| WORK ASSIGNMENT: Compound | UNIT: MB |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

I have two requests of you. First, a consultation with an outside cardiologist. Second, I wish to review my complete medical file that is kept in Health Services. The reasons for this are detailed below. Moreover, as shall become evident, this consultant should be a Board-certified cardiologist, who is not beholden to this facility, and whose credentials indicate considerable clinical experience, including teaching responsibilities.

On March 11, 2003, I came to this facility and immediately made available to staff relevant medical documents, including a report from my cardiologist in Albany, N.Y., describing my heart disease and its treatment. This treatment regimen had been arrived at over some time and, based on the last two coronary angiograms, the progression of my coronary artery disease had been halted, perhaps even reversed a bit. My treatment was arrived at by my attending cardiologist, who is also a professor at Albany Medical College, with consultation

(OVER)

(Do not write below this line)

DISPOSITION:

Signature Staff Member                                              Date

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)                This form replaces BP-148.070 dated Oct 86
                                                    and BP-S148.070 APR 94

obtained from my internist at the Lahey Clinic, who also discussed my case with his colleagues.

When I came here, it took about one week to get any treatment resumed, a medically indefensible development, as abruptly stopping some of my medications could have very ominous consequences. This was not a very auspicious introduction to the quality of medical care available here.

Then, I discovered that significant changes - as well as deletions - had been unilaterally made to my treatment regimen. Since then, I have attempted, with no success and much frustration and suffering, to get my initial treatment restored. This quest has now been going on for nearly 2 months. In making arbitrary medical changes, Health Services violated one of the cardinal tenets of good medical care, which is not to change a program of medical treatment that works, especially one based on the accumulated clinical experience and wisdom of knowledgeable practitioners who know the patient well and have developed an effective, individualized treatment approach, particularly if you are new on the scene and don't know the patient well.

Unfortunately, this was ignored and I soon began to have side-effects from the changes. I tried, to no avail, to inform Health Services of this.

On Sat., March 29, during AM count, I passed out, losing consciousness, keeling over onto the hard dormitory floor, striking the back of my head and other parts of my body. (A similar fall, around the same time, cost the life of Dr. Robert Atkins, the famous diet doctor.) The PA rushed over to examine me, though he essentially took my blood pressure, despite the fact that additional tests were indicated — at least an EKG to rule out any significant cardiac event and a skull x-ray to make sure there was no internal trauma, etc. But nothing else was done except to lower the dose of one medication. Over the next 2 weeks, I saw Dr. Ramirez 3 times mainly because of this episode of loss of consciousness (the first in my life! on the treatment regimen I was on prior to March 11, I never had any side-effects). The third time I saw the doctor, even though he had my medical record before him, he confused me with someone else — not the most encouraging development — and then proceeded, after telling me what he planned to do, to make puzzling changes which he had not discussed with me, such as stopping one important medication and halving the dose and frequency of another. Perhaps he again confused me with another patient. I tried to see Dr. Ramirez again but he didn't keep that appt — something he apparently does often — but I finally got to see the physician who temporarily covered for him. Despite all this, it was made clear to me that my original medications would not be restored. Also of note is that, despite 4 MD visits, the extent of any physical examination consisted of my BP being taken, probably my pulse — I could've told them that — and a brief attempt, once, at chest auscultation.

Since I arrived at this facility and had my treatment changed, I have had persistent side-effects that have worried me and made most of my days unpleasant and uncomfortable, to say the least. The main symptoms are lightheadedness, dizziness and wobbly legs when standing, difficulty with bright sunlight, occasional visual spots, profuse episodic sweating and recurrent joint and muscle pains. These symptoms rarely abate before dinner time and most days are misery.

Thus, you can see why I have acquired a profound distrust of, and lack of confidence in, the clinical judgment and professional dedication of your Health Services. Hence my request for an outside consultation, as well as access to my medical records.

I await your written reply.

[signature]

ADDENDUM 7

# INMATE REQUEST TO STAFF RESPONSE

**INMATE NAME: Sabot, Theodore**

**Reg. No. 11556-052**

**UNIT: Mountain B**

This is in response to your Inmate Request to Staff, received in my office May 20, 2003. You are requesting an outside referral to a cardiologist. Additionally, you requested to review your medical records kept in Health Services.

When you were admitted to our institution on March 11, 2003, you had medications for the treatment of hypertension, coronary artery disease, and high cholesterol, from your cardiologist. Since you have requested medical evaluation by a cardiologist, the decision was made to transfer you to the Federal Medical Center, Butner, North Carolina, so that the monitoring of your cardiac condition can be adequately provided.

A review of your medical records can be requested through the Health Information Technician at FMC Butner, by submitting an Inmate Request to Staff.

_____
Gary L. Winkler, Warden

6-8-03
Date



July 29, 2003

**NON-PARTICIPATING PROVIDER**
David Agahigian, M.D.
171 Interstate Drive
West Springfield, MA. 01089

Fax #: (413) 732-8065, Attn: Barbara
Authorization: 030725050259

**MEMBER/PATIENT INFO**
Mr. Theodore Sabot
23 Walden Lane
Pittsfield, MA. 01201

Member #: 07730898000
DOB: 8/29/38

## AUTHORIZATION FOR COVERAGE OF TREATMENT BY A NON-PARTICIPATING PROVIDER

Dear Provider:

In accordance with the above member's GHI HMO Health Service Contract, coverage for services by a non-participating provider requires prior written authorization by the GHI HMO Medical Director. This letter serves as a confirmation of our conversation and the specific arrangements agreed upon.

Authorization for coverage is provided solely for the services described below and is further **limited** as indicated in this letter:

**Ambulatory Surgery, 2 separate procedures for repair of retinal detachment at Baystate Medical Center on 7/25/03 and 7/27/03 — Authorization Valid: 7/25/03 – 7/29/03**

Hospitalization related to this treatment **is not** authorized. This authorization is further limited to:

1. Services which are covered benefits in accordance with the member's Health Service Contract.

2. Services provided as described above and only by the provider indicated above. Referrals to other providers and/or ancillary are not covered benefits.

3. Any additional medical services must have prior written authorization.

4. Any authorized **laboratory or diagnostic service** must be provided by a participating provider unless otherwise authorized by GHI HMO (a listing may be obtained by calling the Health Plan's Provider Relations Department).

5. GHI HMO requires **precertification for selected radiological procedures**. Precertification by CareCore National, LLC is required for all GHI HMO members for the following radiological and imaging procedures when performed on an outpatient basis in Outpatient Hospital Facilities, Free Standing Radiology Facilities, and Non-Radiology Office Based settings: **CT, MRI, MRA, Nuclear Medicine, PET Scans and Obstetrical Ultrasounds (in excess of three (3) during a pregnancy). Pre-certification number is valid for forty-five (45) days from date of receipt.**

   To initiate precertification, please have your GHI HMO authorization number available and contact CARECORE NATIONAL, LLC's dedicated GHI HMO Team at (800) 835-7064.

6. This authorization and GHI HMO liability automatically expires should the member's coverage cease to be in force anytime during the treatment described herein.

7. Non-participating provider agrees to adhere to the organization's quality assurance requirements and agrees to provide medical information about care being provided.

8. Non-participating provider agrees to adhere to GHI HMO's policies and procedures. Non-participating provider agrees to bill GHI HMO within 60 days of date of service.

**Group Health Incorporated**   Administration, PO Box 4332, Kingston, NY 12402 / (877) 244-4466 / www.ghi.com

GHI HMO is a subsidiary of Group Health Incorporated.

ADDENDUM 9

```
                        David D. Crall, D.D.S.
                            120 Elm St
                        Pittsfield, MA 01201
                          (413) 442-1656
Theodore Sabot                                   Service Rendered: 07-15-2003
23 Walden Lane
Pittsfield, MA 01201
Pat. SSN#: 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   DOB: 08-29-1938
Family #: 02673
                           Family Balance Prior To This Visit Was:     0.00

             Procedure                                  Tooth &
Name         Code  Description                          Surface        Amount
-----------  ----- -----------------------------------  -- -----       -------
Theodore     D0220 Intraoral-Periapical-First Film      8               16.00
Theodore     D2335 Resin - Four Or More Surfaces Or Involving 8  MIFL  180.00
Theodore     D2335 Resin - Four Or More Surfaces Or Involving 9  MIFL  180.00
Theodore     D0460 Pulp Vitality Tests                  8               20.00
Theodore           Patient Discount Credit                              -20.00
                                                                       -------
                                        Total This Visit:              376.00
                                        Plus Prior Balance:              0.00
                                        Less Check #3697 Of:           376.00
                                                                       ========
                                        New Family Balance:              0.00
Today's Charges               :    396.00
Primary Ins. Should Pay       :      0.00
Secondary Ins. Should Pay     :      0.00
Patient Should Pay            :      0.00

Next cleaning appointment:    08-  -2003
Next  dental  appointment:    08-21-2003 at  2:50
```

```
                                 ----------------------------------------
                                 Doctor's Signature (If Required For Insurance)
                                 SSN #: 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      License #: 14811
```

Your Medicare Number: 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A
Page 2 of 4
February 12, 2004

ADDENDUM 10

## PART B MEDICAL INSURANCE - ASSIGNED CLAIMS (continued)

| Dates of Service | Services Provided | Amount Charged | Medicare Approved | Medicare Paid Provider | You May Be Billed | See Notes Section |
|---|---|---|---|---|---|---|
| Claim number 02-04021-396-270 **Albany Medical College, P O Box 32511, Hartford, CT 06150-2511** Referred by: Dr. Derisio, Darryl J., M.D. Dr. O Leary, Anthony M. M.D. | | | | | | |
| 01/14/04 | 11 Anesth, spine, cord surgery (00600-QK) | $787.50 | $177.24 | $141.79 | $35.45 | c |
| Claim number 02-04022-166-940 **Albany Medical College, Dept Of Surgery, Po Box 32511, Hartford, CT 06150-2511** Dr. Derisio, Darryl J. M.D. | | | | | | |
| 01/14/04 | 1 Neck spine fusion (22554) | $4,620.00 | $1,242.05 | $993.64 | $248.41 | |
| 01/14/04 | 1 Insert spine fixation device (22845) | 5,625.00 | 733.21 | 586.57 | 146.64 | |
| 01/14/04 | 1 Apply spine prosth device (22851) | 1,060.00 | 404.96 | 323.97 | 80.99 | |
| 01/14/04 | 1 Spinal bone autograft (20937) | 450.00 | 169.61 | 135.69 | 33.92 | |
| | **Claim Total** | $11,755.00 | $2,549.83 | $2,039.87 | $509.96 | |
| Claim number 02-04015-153-270 **Prime Care Physicians Pc, Po Box 15016, Albany, NY 12212-5016** Referred by: Dr. Coplin, Bruce E., M.D. Dr. Kim, Alice Y. M.D. | | | | | | |
| 01/09/04 | 1 Heart image (3d), multiple (78465) | $850.00 | $508.09 | $406.47 | $101.62 | |
| 01/09/04 | 1 Heart wall motion add-on (78478) | 450.00 | 89.47 | 71.58 | 17.89 | |
| 01/09/04 | 1 Heart function add-on (78480) | 450.00 | 89.47 | 71.58 | 17.89 | |
| 01/09/04 | 1 Cardiovascular stress test (93015) | 275.00 | 101.29 | 81.03 | 20.26 | |
| 01/09/04 | 2 Technetium TC 99m sestamibi (A9500) | 142.50 | 134.70 | 107.76 | 26.94 | |
| 01/09/04 | 5 Dipyridamole injection (J1245) | 99.75 | 25.50 | 20.40 | 5.10 | |
| | **Claim Total** | $2,267.25 | $948.52 | $758.82 | $189.70 | |



**Notes Section:**

a This approved amount has been applied toward your deductible.

(continued)